### HENJES et al. v. UNITED STATES.

### THE GERD H. HENJES.

### THE IRA NELSON MORRIS.

#### No. 18109.

United States District Court
E. D. New York.
Aug. 18, 1949.

Purdy, Lamb & Catoggio, New York City, proctors for libelants · (Edmund F. Lamb, New York City, advocate).

J. Vincent Keogh, United States Attorney, New York City, proctor for respondent (Eugene Rheinfrank, Special Attorney, Department of Justice, New York City, advocate).

KENNEDY, District Judge.

On September 18, 1946, Helen K. Henjes and Edmund F. Bowen, as executors of the Estate of Gerd H. Henjes, owners of the tug Gerd H. Henjes (referred to as Henjes)[1] filed their libel on in rem principles against the United States of America as owner of the steamer Ira Nelson Morris (referred to as Morris).[2] Each vessel charges the other with incompetence, each saying that the other failed to maintain a lookout, and failed to keep under control so as to avoid a collision which took place between the two vessels on April 1, 1946, in broad daylight. At that time Henjes was moored against a breakwater that forms the southerly side of the Erie ·Basin entrance, which is known as the "gap", a place often mentioned in the decided cases. The northerly side of the gap is formed by the end of a long pier (Beards Erie Basin Stores).

Morris had crossed the bay in a generally northerly direction, coming from quarantine. She rounded to, somewhere to the southward of Red Hook Point, and then shaped her course almost due south, keeping quite close to the pierheads, as she made her way toward the gap. A docking pilot was then in charge of the ship. On her port bow there was a Moran tug, merely hanging on; a second Moran tug was trailing the steamer, ultimately to assist her in a docking operation at Pier 3, Erie Basin. Morris was making about four knots.

As Morris approached the gap, which is nearly 200 feet wide, the tide was at ebb. There was a fresh southeast wind, force about 26 miles per hour. While the day was cloudy, there was no question about visibility.

As Morris made for and entered the gap in the manner in which I described, her speed about four knots, she saw moored to the gap face of the breakwater two tugs. The entire length of the gap face from the channel to the point where the breakwater juts off sharply to the south ·is about 525 feet. One of the tugs in question, owned by Dalzell (referred to as the Dalzell tug), was moored in such fashion that her stern was about 15 feet in from the channel end of the gap face. This vessel is about 70 feet long. Henjes was moored still further in toward the basin, with her bow facing the channel

---

1. Gerd H. Henjes is a diesel propelled tug. Her length is 68.1 feet, her beam 18.0 feet, and her depth 7.9 feet. She is now, I believe, known under another name (Jane F. Murphy).

2. Ira Nelson Morris is a ·liberty· ship 442 ·feet long and 57 feet wide. She displaces about 10,000 tons.

and quite close to the bow of the Dalzell tug. At the trial there was a long-winded dispute about the manner in which Henjes was moored, the Morris at first suggesting that her stern was angling out from the breakwater. But even the evidence called by Morris established that this claim was baseless, and one of her own witnesses said that as Morris entered the gap Henjes was strictly parallel with the breakwater. A further dispute concerns itself about the claim of Henjes that she had out not only a bow line but also a stern line. Morris said she had no stern line. But her reliance is not so much on what she saw as it is upon her belief that there was no "spile" suitable for Henjes to use as a mooring for her stern line, as her crew claimed she did. But again a witness called by Morris familiar with the locale, testified that in April 1946 there were, along the breakwater "fender piles", whose tops were flush with the string piece, which probably could be used for mooring, and, in fact, were used for mooring. I find as a fact that Henjes was moored parallel with the breakwater and had out not only a head line but a stern line.

As Morris rounded to on a southeasterly course to enter the gap she also noticed that a victory ship was moored starboard side to inside the basin, along the inside (easterly) face of the breakwater, in such fashion that her stern protruded some 15 feet out into the gap; in addition, lying along the port side of this ship was a barge whose stern protruded five feet still further out into the fairway. .

There can be no doubt that as Morris rounded to she blew one blast, nor can there be any doubt that shortly afterward the Dalzell tug promptly backed out into Buttermilk Channel as the Morris approached. The controversy is about what happened thereafter.

Henjes says that Morris passed her quite close aboard, and then backed in order that she could get room to straighten herself out by going ahead (presumably on left rudder), so as to clear the stern of the victory ship and the barge alongside her. It is Henjes' contention that as Morris went ahead after the backing maneuver her stern swung into the Henjes' starboard side, slightly forward of amidships and about at the location of the pilot house, crushing the tug against the face of the bulkhead. Morris, on the other hand, at first urged in her further answering clause that Henjes suddenly moved ahead without warning and thus swung her stern away from the dock and into contact with the starboard quarter of Morris. At the trial the latter abandoned this claim. As nearly as I understand her position now, she says that Henjes was guilty of a statutory violation in that she obstructed a navigable channel, 33 U.S.C.A. § 409; that, moreover, the stern of Henjes was not properly secured, for which reason the suction created by Morris as she passed brought Henjes into contact with the starboard quarter of the steamer, thus causing the damage.

Morris produced at least one witness who supported its suction theory, but I do not consider his evidence reliable. Moreover, the physical nature of the damage to Henjes is such that there is no escape from a finding that she was crushed between the steamer and the breakwater, and not merely sucked into the side of Morris. .

Little need be said concerning the contention made by Morris that Henjes, being in the act of obstructing a navigable channel, was under a duty to clear out as soon as she heard the blast blown by Morris, as Dalzell did, and that failing such action by Henjes she must take the consequences. It is necessary to keep in mind that the beam of Morris is only about 60 feet and that, as she entered the gap, she had nearly 200 feet width of navigable water in which to maneuver. She had at hand the assistance not of one but of two tugs. She does not dispute that Henjes was seen from her bridge as she rounded to. To argue that under these circumstances Morris was at liberty to crush Henjes as one would step on a beetle seems to me an unwarranted extension of the statute, 33 U.S.C.A. § 409, invoked by the steamer, even if it were controlling. While custom cannot invalidate a statute, it is nevertheless the fact that tugs habitually moored where Henjes was, and for all I know they

do so still. In fact, at some period Dalzell used that particular point to relay orders to its tugs. It is wholly unlikely that this practice would have grown up if, in fact, mooring at that place had the effect of blocking the channel. It is much more likely that Morris, having as she admitted, shaved the pier heads on her southerly course towards the gap, was unable by the use of her engines alone to make a tight turn at the entrance. And her position was probably aggravated when there developed the necessity to avoid the stern of the liberty ship already mentioned. I do not believe that Morris backed, as Henjes says she did, in the sense that she actually acquired stern way. I do find that she slowed and turned to port as she was about to pass Henjes. She was already too close to the breakwater, and in all likelihood the strong southeast wind and the ebb tide, striking her on the starboard bow as she used left rudder, would add to the turning moment and swing her stern into the Henjes.

I find as a fact that Morris was wholly to blame for the damage to Henjes, her faulty maneuvers being the only proximate cause of the disaster. This entitles the libelants to the usual interlocutory decree against the respondent, with costs.

I have filed findings of fact and conclusions of law.